## SHROYER, Respondent, v. BARKLEY, Appellant.

1. Where a party to a submission to arbitration failed to attend upon the arbitrators at the time and place appointed for the hearing of the matters submitted; *held*, that it was not error to refuse to vacate the award made upon a motion made under section 9 of the act concerning arbitrations, (R. C. 1845, p. 121,) the ground of which was that the failure to attend at the hearing was unavoidable by reason of the obstruction of the roads, caused by the rise of the water courses.

*Appeal from Saline Circuit Court.*

*Napton*, for appellant.

I. The unavoidable absence of Barkley, after using due diligence, he having at the time a meritorious defence, comes within the spirit and meaning of the 9th section of the act concerning arbitrators,.

II. If it dóes not, the court has the power and it is its duty to vacate an award rendered under such circumstances. This power is inherent in all courts, and the statute was not needed to give it, and will not be construed to take it away unless the language be plain and unequivocal, and it admit of no other construction. (In the matter of Hick, 8 Taun. 794 ; Hollingsworth v. Lieper, 1 Dallas, 161 ; Chapman v. Hirwan, ib. 187 ; Peters v. Newkirk, 6 Cow. 103 ; Falconer v. Montgomery, 4 Dall. 234 ; Bedington v. Suithwell, 4 Price, 232 ; 2 Chitty, 44 ; Salk. 71 ; Caldwell on Arb. 45, 118, 124, 210 ; Lutz v. Luthecum, 8 Pet. 178–9 ; Craig v. Hawkins, Harden, 46 ; Tonance et al. v. Amsden & Chapman, Tidd, 841 ; 3 McLean, 509, 515.)

II. If section 23 of our statute is to be understood as still reserving the right of action upon the arbitration bond and the award, and also the power of a court of chancery over these awards, as it existed in England, then it is manifest that in accordance with the authorities in England and this country, the judge should *not enter a judgment,* but leave the parties to their respective remedies, if he entertained doubts about the question of diligence. (Tidd's Prac. 889.) But chancery has no jurisdiction, unless the grounds of relief are discovered *after* judgment on the award. (Waples v. Waples, 1 Harrington, 392.)

III. It is manifestly the intent of our statute that the court which is called upon to vacate or to enter judgment upon an award, has all the powers which a court of equity would have in a distinct application. This was the English practice : where the application was made in due time under the statute, and the

arbitration or submission was made a rule of court, every ground of relief in equity against an award was equally open in a court of law.   (2 Tidd.)

*Gardenhire*, for respondent, cited R. C. 1845, p. 122, § 2, 9, 12; 7 Yerg. 239; 10 id. 202; 2 J. J. Marsh. 346; 2 Johns. Ch. 551; 1 Day, 153; 3 Rand. 122; 1 Wash. (Va.) 156, 11; 3 Harr. & McHen. 141; 7 Conn. 536; 2 Gall. 61; 1 Root, 197; 8 Greenl. 119, 288; 6 Pick. 148; 10 id. 348; 8 Mass. 410; 9 Mo. 29; 1 Ves. Ch. 365; 6 id. 282; 9 id. 365; 2 id. 15; 12 id. 412; 21 Pick. 417.

RYLAND, Judge, delivered the opinion of the court.

This was a submission of certain matters in chancery between the parties, to the award of two persons chosen by them. The submission was in writing, dated 3d of July, 1854, and the award was to be made and published on or before the 1st day of October, 1855.   The arbitrators fixed several different days and times for the hearing, which was postponed for good cause, until at last they fixed the 17th day of September, 1855, as the time for hearing and determining the matters.   The court-house in Marshall, in the county of Saline, was the place of meeting.   The parties were duly notified, and on the day and at the place Shroyer met the arbitrators, but Barkley did not.   The arbitrators proceeded to hear and to decide the matters in the absence of Barkley, and made their award in writing agreeably to the terms of the submission.   At the November term of the Circuit Court of Saline county, in 1855, the next term after the award was made, Shroyer produced the award and submission, and moved that a judgment of the court be made and had thereon, and Barkley appeared at the same term, and moved the court to vacate and set aside the award. Barkley stated five causes for his motion, and supported his motion by his affidavit.   The court heard the motions of the parties and the testimony produced thereon for and against, and overruled Barkley's motion, and sustained Shroyer's motion,

and made the award of the arbitrators a judgment of the court according to the terms of the submission. Barkley excepted, and brings the case here by appeal.

The principal ground relied upon by Barkley for vacating the award was his absence, and his alleged inability to meet the arbitrators at Marshall on the 17th September, 1855, on account of high waters. The second cause assigned for setting aside and vacating the award is as follows : " Because the award was obtained and made by undue means, in this, to-wit,. that the said Barkley resided in Benton county, and at the time. the award was made, and the hearing had before the arbitra-- tors, he was prevented from attending the hearing by recent high waters and floods. He states that the creeks and water- courses were so high from rains, that he could not possibly at- tend the hearing, and that there was an *ex parte* hearing had in his absence ; that advantage was taken of his absence by the said Shroyer and the arbitrators ; that if his part of the case had been presented and proved, no such award could have been given ; that he could have produced evidence, and would have done so, to establish his accounts and to disprove those of the said Shroyer, but was prevented from doing so by the act of God aforesaid ; that in order to have the case fully and fairly presented to them, it became and was the duty of the arbitra- tors to postpone the hearing to a further time, until the waters subsided, so that the said Barkley could attend ; but the said Shroyer and the said arbitrators, well knowing the premises,. proceeded in his absence and made up said award, which is un- just, and was procured as aforesaid by undue means." There is nothing in any of the other causes assigned to vacate the award. The affidavit of Barkley is as follows : " Now at this day comes William D. Barkley, who makes oath and says that in a matter of dispute between this deponent and Presley Shroyer, wherein certain matters of difference were referred to the arbitrament of Edward Garnett and Randal Latimer ; and whereas said arbitrators in the above cause, agreeably to a time fixed upon by themselves, to-wit, on the 17th day of Septem-

ber, A. D. 1855, met in the town of Marshall, on the day last aforesaid, at which time this deponent was notified to be present; but this deponent states that he was unable to attend and be present at the time and place mentioned, because there were sundry creeks and streams intervening between his place of residence—which is Warsaw, Benton county—and the town of Marshall in Saline county; that he, the deponent, had made every necessary arrangement and preparation to attend the sittting of the arbitrators and the investigation between himself and Shroyer; that about the time this defendant was ready, and about starting to Marshall, there were heavy and considerable falling of rains; that the streams, that is to say, Flat creek and others, were swollen to such a height that it was impossible for the deponent to pass or cross them without endangering his life; that the streams aforesaid remained in that condition for several days; there were no bridges or ferries across said streams, for want of which all communications were cut off and suspended between Warsaw and Marshall for several days. This deponent says that as soon as the water-courses referred to permitted the deponent hastened on to Marshall, but arrived too late to be present and attend the trial aforesaid; that it was no fault of the deponent that he was not present at the trial: he was anxious to be present; that he had claims and demands against said Shroyer, which were meritorious and just; that if he had been present, as he desired to be, that he had no doubt but that he could have shown himself entitled to an award for a large amount of money; but by reason of his unavoidable absence an award has been entered up against him for a large amount. This deponent says that if he could have been present at the trial aforesaid, he had witnesses by whom he could have proven that the claims set up by Shroyer were unjust and had no foundation in law or equity; that Shroyer was fully aware of the condition of the water-courses, but, for the purpose of taking an obvious advantage of the absence of this deponent, insisted upon the trial of this cause in his absence, which enabled him to obtain an undue advantage over deponent. This

deponent further states that if he can obtain a new trial it will enable him to recover from said Shroyer a large amount of money, which he is legally and equitably entitled to; and without a new trial this deponent will be forever barred and prevented from a recovery of his just claims, and be subjected to the payment of the unjust award made by the arbitrators, which was obtained and procured by undue means, and ought to be set aside and vacated; and this affiant prays the court to vacate and set aside the said award. He states that the award and hearing was had, and the award made, in the absence of this affiant, and was based wholly upon an *ex parte* hearing, this affiant not being present in person or by agent or attorney, but was prevented from being there and from having his proof before the arbitrators by the act of God, as hereinbefore set forth."

The testimony offered was in relation alone to the high waters, and upon this subject the testimony as to the practicability of travelling from Warsaw to Marshall is somewhat conflicting; at least there is great doubt of the reasonableness of Barkley's excuse, for there is positive proof of the fact that several persons did pass from Saline county to Warsaw and back about the time Barkley ought to have done so. And although Barkley's counsel argued the matter before this court as if the Circuit Court had found the fact to be that Barkley was not able to attend the arbitrators at Marshall, on the 17th September, 1855, by reason of the high water and flood, and as if he had been prevented from doing so by the act of God, yet the record does not show that such was the opinion of the Circuit Court; for no such fact is proved, or even intimated by the Circuit Court. Indeed, in our opinion, the evidence would well have justified the court in finding to the contrary. The question, then, presented by this record is, will the absence of Barkley afford a sufficient reason to vacate the award in this case, under the circumstances? In our opinion, it will not. He was duly notified; his absence is his own neglect or misfortune. If he had gone before the arbitrators and made his excuse then,

even after the day appointed for the meeting, and asked for a re-opening of the hearing, or for permission then to offer his evidence, and they had refused him, the case would have presented a different aspect. But here is nothing done; he is simply absent because the water-courses are flush or high, and depends alone upon that subject for vacating the award. There is nothing of undue means used by Shroyer, or of improper or undue means on the part of the arbitrators. They had postponed the meetings from time to time until less than two weeks remained for them to act, and we can not say, from all the facts appearing on the record, that the Circuit Court committed error in giving judgment on the award. There is no ground for supposing that the award was procured by corruption, fraud or other undue means. The arbitrators met on the 10th of August, 1855, and appointed 17th September for the meeting and hearing of the parties. The parties were duly notified of the time and place, and there is no ground to suppose that the arbitrators or Shroyer anticipated any obstruction by means of high waters, or any other means, to the meeting or attendance of the parties at that day.

These tribunals are of the parties' own making, and their decisions are looked upon by the courts with favor. The arbitrators are chosen to prevent tedious and expensive litigation—are selected as the judges of the parties, and their awards have ever been favored in our courts. Corruption, fraud or other undue means are necessary to be proved or be made to appear before the courts will vacate the awards. There is no ground here to impute any improper act to the arbitrators, or misbehavior on their part to the prejudice of Barkley. There is no proof of any undue means or any unfair or fraudulent practices on the part of Shroyer to induce the arbitrators to make the award; and whether the courts of our state will go beyond the causes mentioned in the 9th section of our act, or not, in vacating or setting aside the awards of arbitrators, is not the question here presented. But did the facts, as set forth on the record, authorize the court to render judgment on the award?

We have not the least hesitation in stating that, in our opinion, the court below properly overruled Barkley's motion and sustained Shroyer's. The judgment will therefore be affirmed; the other judges concurring.